UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FATHIREE ALI,

          Plaintiff,                  Case No. 1:25-cv-827

v.                                         Honorable Robert J. Jonker

ROBERT AULT et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility Lapeer, Lapeer County, Michigan. The events about which he

complains occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues the following LCF staff in their individual and official capacities: Assistant Deputy Warden Robert Ault; Administrative Assistant Russell Rurka; Resident Unit Manager Nicholas Ader; and Prison Counselors Scott Cline and Markiyroe Garrett. (Compl., ECF No. 1, PageID.1, 3–4.)

In Plaintiff's complaint, he alleges that in August of 2021, Defendant Garrett "without any notice to Plaintiff, removed [Plaintiff's] stored legal property out of the unit." (*Id.*, PageID.4.) Plaintiff submitted a "complaint" to the non-party warden about Defendant Garrett's "removal and denial of access to [the] property, as well as the interference with a pending civil lawsuit." (*Id.*)

On October 21, 2021, Defendant Garrett called Plaintiff to his office and told Plaintiff: "You're gonna to tell the warden on me. Your property was taken because of that lawsuit. So, I don't care who you talk to, you're not getting your property back, it's gone." (*Id.* (phrasing and punctuation in original retained).) Plaintiff claims that he "then contacted the U.S. District Court" about the matter and the "violation of the settlement agreement terms." (*Id.*) Plaintiff states that "[t]he Court responded to [his] motion in December 2021."[1] (*Id.*)

In January of 2022, "Defendant Ader met with [Plaintiff] about his filed lawsuit." (*Id.*) Plaintiff alleges that during this meeting, Defendant Ader stated: "You should not have wrote the court, when you file complaints about us to the courts it causes more problems for everyone

---

[1] Although not specifically articulated by Plaintiff, it appears that Plaintiff's allegation regarding "contact[ing]" the Court is a reference to Plaintiff filing a motion to enforce settlement agreement in *Ali v. Betts et al.*, No. 1:18-cv-1201 (W.D. Mich.). In that case, Plaintiff filed a motion to enforce settlement agreement in November 2021, and the Court issued a report and recommendation addressing the motion in December 2021. See *Ali v. Betts et al.*, No. 1:18-cv-1201 (W.D. Mich.), (ECF Nos. 36, 38).

especially you. You'll learn soon, because now I'm going to make sure you lose all your sh[]t." (*Id.*, PageID.4–5 (phrasing, punctuation, and alteration in original retained).)

Subsequently, on March 14, 2022, Defendant Cline met with Plaintiff. (*Id.*, PageID.5.) Plaintiff claims that at the meeting, Defendant Cline said: "I know Garrett and Ader have spoke with your [sic] about this lawsuit. Did you decide to drop the lawsuit?" (*Id.* (phrasing in original retained).) In response, Plaintiff said, "no," and then Defendant Cline stated: "That's all I needed to know." (*Id.*) Plaintiff alleges that "[t]he following day, on March 15, [Defendant] Cline while referencing the [prior] lawsuit, wrote Plaintiff a Notice of Intent with instructions to dispose of [Plaintiff's] property." (*Id.*) "[Plaintiff] filed another complaint with the warden." (*Id.*)

On March 24, 2022, "Defendant Ader destroyed Plaintiff's property." (*Id.*) Plaintiff then submitted a grievance about the matter on March 28, 2022. (*Id.*) Thereafter, on April 12, 2022, Plaintiff was called to a meeting with Defendants Ault, Ader, Cline, and Rurka. (*Id.*) Defendant Rurka asked:

> What's up with this grievance, it's going to have the same results of that stupid lawsuit. We've gotten rid of your property and weren't not [sic] going to reimburse you. What else is it going to take to make you stop with this nonsense. Guess you'll be content when you and all of it is gone.

(*Id.* (punctuation in original retained).) Plaintiff claims that Defendant Cline then stated: "I already tried to talk sense to him, I had Garrett and Ader speak with him. He just won't learn, will you?!" (*Id.* (punctuation in original retained).) Plaintiff alleges that he "asserted his right to redress the harassment and unlawful seizing of his property," and then Defendant Ader "threaten[ed] to have [Plaintiff] transferred to a far northern facility to impede his wife's weekly visit." (*Id.*, PageID.5–6.) Plaintiff claims that Defendant Ault "nodded affirmatively, then told [Plaintiff] to go back to his housing unit." (*Id.*, PageID.6.)

In May of 2022, Plaintiff was transferred to a prison in "Michigan's Upper Peninsula," which had "more restrictions and fewer privileges." (*Id.*) Plaintiff alleges that all of the named Defendants are involved in transfer decisions at LCF. (*See id.*, PageID.3–4.) Plaintiff claims that "[t]he transfer caused [his] removal from rehabilitation programs, placement in a more harmful living environment, cancellation of attorney visit, loss of visits with his wife, loss of employment, and more restricted law library access and phone privileges." (*Id.*, PageID.6.)[2]

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation and that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1983. (*Id.*, PageID.6–7.) Additionally, the Court construes Plaintiff's complaint to raise an access to the courts claim and a Fourteenth Amendment procedural due process claim regarding the confiscation of his property. Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[2] Plaintiff states that in April of 2022, he filed a step II grievance appeal about the events in the present lawsuit. (Compl., ECF No. 1, Page.ID.6.) Plaintiff states that he then submitted a step III grievance appeal, which was "denied in June[] 2023." (*Id.*, PageID.6 & n.1.) Based on the dates referenced by Plaintiff in his complaint, it is unclear whether Plaintiff's reference to June of 2023 is correct or whether this is a typographical error and Plaintiff intended to reference June of 2022. Plaintiff signed his complaint on May 27, 2025. (Compl., ECF No. 1, PageID.8.) As such, using the information before the Court at this time, based on the date of either June of 2022 or June of 2023, the Court assumes, without deciding, that Plaintiff's present lawsuit is timely. *See, e.g.*, *Heard v. Strange*, 127 F.4th 630, 635 (6th Cir. 2025) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)).

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.1, 3–4.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (Compl., ECF No. 1, PageID.8.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing

6

more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility typically moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). In the present action, Plaintiff's allegations against the named Defendants relate solely to past harm, not future risk of harm. And, Plaintiff is no longer confined at LCF, which is where he avers that Defendants are employed. Thus, Plaintiff's transfer moots his request for declaratory and injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

### B. First Amendment Retaliation Claims

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him when they confiscated and destroyed his property and transferred him to a prison in the Upper Peninsula. (*See* Compl., ECF No. 1, PageID.6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, although Plaintiff has by no means proven his First Amendment retaliation claims, at this time, the Court will not dismiss Plaintiff's retaliation claims against Defendants for the alleged confiscation and destruction of Plaintiff's property and Plaintiff's transfer to a prison in the Upper Peninsula. *See, e.g.*, *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009); *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

### C.     Access to the Courts Claims

Although not specifically articulated by Plaintiff, the Court generously construes Plaintiff's complaint to raise an access to the courts claim, alleging that Defendants' actions interfered with Plaintiff's pursuit of a prior lawsuit in this Court. (*See generally* Compl., ECF No. 1.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide

8

affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

9

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff references notifying the "U.S. District Court" and filing a prior lawsuit, but Plaintiff does not identify the specific lawsuit at issue. (Compl., ECF No. 1, PageID.4.) Generously construing Plaintiff's complaint and reviewing publicly available court dockets, it appears that Plaintiff's reference to a prior lawsuit is likely a reference to *Ali v. Betts et al.*, No. 1:18-cv-1201 (W.D. Mich.), a civil rights action that Plaintiff previously filed in this Court. In that case, the parties agreed to settle the matter in mediation, and then Plaintiff filed a number of motions seeking first to enforce the settlement agreement and then seeking to set aside the settlement agreement. In the present action, Plaintiff fails to allege any facts to show that Defendants' actions resulted in any lost remedy in the prior suit. (*See generally* Compl., ECF No. 1.) Because Plaintiff has failed to allege facts showing a lost remedy, he has failed to state a claim for denial of access to the courts.

Accordingly, for the reasons set forth above, Plaintiff's access to the courts claim will be dismissed.

### D.      Fourteenth Amendment Due Process Claims

The Court construes Plaintiff's complaint to raise a procedural due process claim regarding the deprivation of Plaintiff's property. As explained below, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### E.    Section 1983 Civil Conspiracy Claims

Plaintiff alleges that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1983. (Compl., ECF No. 1, PageID.7.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of

a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, although Plaintiff claims that Defendants mentioned each other when speaking with Plaintiff about the events underlying this lawsuit, Plaintiff does not allege that any "agreement" or "plan" existed. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff's subjective belief and personal interpretation of the events, without supporting facts, are insufficient to show that Defendants engaged in a conspiracy. And, the fact that Defendants each took allegedly adverse actions against Plaintiff does not on its own show that they engaged in a civil conspiracy. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not

allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that the following claims against Defendants will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): official capacity claims, access to the courts claims, Fourteenth Amendment procedural due process claims, and § 1983 civil conspiracy claims. Plaintiff's First Amendment retaliation claims against Defendants in their individual capacities remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 24, 2025                             /s/ Robert J. Jonker
                                                        Robert J. Jonker
                                                        United States District Judge